UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
KEVIN JIANG,

                           Plaintiff,

                -against-

BRIANA CORPUZ, NYPD DETECTIVE
CAROLYN CELONA, ST. JOHNS UNIVERSITY,
and UNIDENTIFIED SECURITY OFFICERS FROM
ST. JOHNS PUBLIC SAFETY

                      Defendants.
-----------------------------------------------------------------x

**MEMORANDUM AND ORDER**

19-CV-5664 (RPK) (ST)

RACHEL P. KOVNER, United States District Judge:

Plaintiff Kevin Jiang used to be a student at St. John's University (the "University") in Queens, New York.  He is suing the University and several other defendants, including Briana Corpuz.  According to plaintiff, Corpuz framed him for driving recklessly on the University campus to cover up her boyfriend's misconduct.  Plaintiff claims that the University participated in this scheme because its campus security officers interviewed him for 20 minutes about the reckless driving.  He alleges that, as a result, the University committed the torts of false imprisonment and malicious prosecution under New York law.  The University has moved to dismiss plaintiff's claims against it.  For the reasons that follow, I dismiss the claims against the University without prejudice.

I.      **Background**

The following factual allegations are taken from the First Amended Complaint (the "Complaint" or the "FAC").  I assume these allegations are true for the purpose of this motion.

On March 25, 2019, plaintiff received a call from his friend Briana Corpuz. FAC ¶¶ 11. She confided that her boyfriend was in trouble with the University. *Id.* ¶¶ 11-13. At an earlier date, her boyfriend had been banned from campus. *Id.* ¶ 12. In spite of that ban, however, Corpuz's boyfriend had been spotted "illegally and recklessly" driving her car on campus that day. *Id.* ¶ 14. Corpuz informed plaintiff she planned to falsely report to the University's campus security that plaintiff—and not her boyfriend—had been the one driving her car. *Id.* ¶ 11. Corpuz believed this lie would fool campus security because both plaintiff and her boyfriend are Asian men. *Id.* ¶ 14. Plaintiff declined Corpuz's request, warning Corpuz that "he would not lie for her." *Id.* ¶ 15. Corpuz later called plaintiff a second time to propose an alternative plan. *Id.* ¶ 16. This time, Corpuz suggested she would inform campus security that plaintiff had been a passenger in the car, and "someone else" was driving. *Ibid.* Plaintiff once again refused to participate in Corpuz's scheme. *Ibid.*

Corpuz ignored plaintiff's wishes. *Id*. ¶ 20. She was contacted by both the University's public safety office and the New York Police Department ("NYPD") and told both organizations that plaintiff had been the one recklessly driving her car on the University's campus. *Ibid*. In response to this tip, a University public safety officer contacted plaintiff on April 1, 2019, and "instructed" him to come in for an interview about the reckless driving incident. *Id*. ¶ 21. Plaintiff and the officer "jointly agreed" he would meet with University public safety officers on April 4, 2019. *Ibid*.

Plaintiff arrived for the meeting as promised. *Id.* ¶ 22. Two University public safety officers were present. *Id.* at ¶ 24. One officer questioned plaintiff about the reckless driving while the other sat nearby listening and observing. *Id.* ¶¶ 22-24. The officer interviewing plaintiff told

him there was a video "showing [he] was the perpetrator of the crime" but that the officers were "not allowed" to show the video to plaintiff.  *Id.* ¶ 25.  In response, plaintiff denied that he was involved in the reckless driving incident.  *See id.* ¶ 29.  He explained that Corpuz was lying and shared with them the details of his conversations with Corpuz.  *Ibid.*  After about 20 minutes, the meeting concluded.  *Id.* ¶ 31.

About ten minutes after the meeting ended, NYPD Detective Celona "appeared on campus and brought plaintiff to the 107th Detective Squad."  *Id.* ¶ 31.  Plaintiff told Detective Celona about his conversations with Corpuz.  *Id.* ¶¶ 32.  Celona "acknowledged knowing Defendant Corpuz and implied there had been problems with [her] veracity previously."  *Id.* ¶ 33.  "In fact," plaintiff alleges, "Corpuz has a history of lying to the police and upon information and belief Det[ective] Celona was fully aware of those situations in which Corpuz had lied."  *Id.* ¶ 34.  Nevertheless, "despite the information being supplied by a not reasonably trustworthy source, [plaintiff] was arrested on the word of a witness [the] Detective knew was unreliable, with no supporting evidence."  *Id*. ¶ 35.

Plaintiff was handcuffed in the course of his arrest and later detained in Queen Central booking for 24 hours on a felony charge.  *Id.* ¶¶ 36-38.  Plaintiff was then arraigned on a reduced charge (an A misdemeanor) and released on his own recognizance.  *Id.* ¶ 38.  As a result of this experience, plaintiff was forced to make multiple court appearances and retain an attorney at the cost of $5,000.  *Id.* ¶ 39.  He also "faced time in jail and imminent suspension from school until the false charges were ultimately dismissed and sealed on the motion of the Queens District Attorney on July 11, 2019."  *Ibid.*  Plaintiff claims he suffered embarrassment, humiliation, imprisonment, and pecuniary harms.  *Id.* ¶ 42.

## II.        Standard of Review

Federal Rule of Civil Procedure 12(b)(6) directs a court to dismiss a complaint that fails

"to state a claim upon which relief can be granted."  To survive a motion to dismiss, a complaint

must "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009).  The facial "plausibility standard is not akin to a 'probability requirement,'" but it requires

a plaintiff to allege sufficient facts to enable the court to "draw the reasonable inference that the

defendant is liable for the misconduct alleged."  *Ibid.* (quoting *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 556, 570 (2007)).  "A well-pleaded complaint may proceed even if it strikes a savvy

judge that actual proof [of the facts alleged] is improbable, and that a recovery is very remote and

unlikely."  *Twombly*, 550 U.S. at 556 (quotations omitted).

At the motion-to-dismiss stage, a court may consider only (**i**) the complaint itself,

(**ii**) documents either attached to the complaint or incorporated in it by reference, (**iii**) documents

that are integral to the complaint, and (**iv**) matters in the public record that are subject to judicial

notice.  *See, e.g.*, *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *Sira

v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004); *Leonard F. v. Israel Disc. Bank of New York*, 199 F.3d

99, 107 (2d Cir. 1999).  When reviewing a complaint on a motion to dismiss, the court must accept

all facts alleged in the complaint as true.  *Iqbal*, 556 U.S. at 678.  The court, however, is not

obligated to adopt "threadbare recitals of the elements of a cause of action" that are "supported by

mere conclusory statements."  *Ibid.*

## III.        Discussion

The University seeks to dismiss plaintiff's two claims against it for, respectively, false

imprisonment and malicious prosecution.  Plaintiff has not adequately pleaded either claim.

The University's motion is accordingly granted.

### A.   Plaintiff Fails to State a Claim Against the University for Common Law False Imprisonment

Plaintiff has failed to adequately plead a claim of false imprisonment against the University.[*]  Under New York law, a plaintiff claiming false imprisonment must allege that: (**i**) the defendant intended to confine him; (**ii**) the plaintiff was conscious of the confinement; (**iii**) the plaintiff did not consent to the confinement; and (**iv**) the confinement was not otherwise privileged. *Hernandez v. United States*, 939 F.3d 191, 199 (2d Cir. 2019). To plead the first element, the plaintiff may allege either that the defendant himself "confined or intended to confine the plaintiff," or that the defendant "affirmatively procured or instigated the plaintiff['s] arrest" by someone else. *Ibid.* (quoting *King v. Crossland Sav. Bank*, 111 F.3d 251, 255 (2d Cir. 1997)). Here, plaintiff fails to adequately plead a false imprisonment claim against the University based on his interview by University employees or based on his subsequent arrest by NYPD officers.

### 1.   Plaintiff Fails to Adequately Allege That He Was Falsely Arrested During the Interview by University Public Safety Officers

Plaintiff has failed to allege that the University's public safety officers falsely arrested plaintiff when they interviewed him. The Complaint does not adequately allege that the University "confined or intended to confine the plaintiff" during that interview. *Ibid.* To do so, a complaint must allege "actual confinement or threatening conduct." *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 294 (S.D.N.Y. 2011) (quoting *Lee v. Bankers Trust Co.*, No. 96-CV-8153 (DAB), 1998 WL 107119 at *4 (S.D.N.Y. Mar. 11, 1998)); *see Lipin v. Hunt*, 538 F. Supp. 2d 590,

---

[*] Courts generally treat the common law claim of false imprisonment as interchangeable with the claim of false arrest. *See, e.g.*, *Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir. 1991) ("In New York, the tort of false arrest is synonymous with that of false imprisonment."); *Hernandez v. United States*, 939 F.3d 191, 199 n.3 (2d Cir. 2019) ("Although false arrest and false imprisonment are sometimes treated as different torts, the Complaint asserts them as one claim, the parties treat them as one claim, and the elements are substantially the same." (citing *Burgio v. Ince*, 79 A.D.3d 1733, 1733 (N.Y. 4th Dep't 2010) (listing same elements for false arrest and false imprisonment))).

602 (S.D.N.Y. 2008); *Sutter v. Dibello*, No. 18-CV-817 (ADS) (AKT), 2019 WL 4195303 at \*23 (E.D.N.Y. Aug. 12, 2019) (quoting *Copantitla*, 788 F. Supp. 2d at 294).  Investigators do not confine a plaintiff simply by interviewing him—even if the plaintiff fears being arrested as a result of the interview.  That is true even if the plaintiff is threatened with arrest, *see, e.g.*, *Copantitla*, 788 F. Supp. 2d at 294 (collecting New York cases), and even if the interview goes on for hours, *see, e.g.*, *Lee*, 1998 WL 107119, at \*4-5 (finding no confinement when security personnel claiming to be former FBI agents interviewed plaintiff for five hours); *Cellamare v. Millbank, Tweed, Hadley & McCloy LLP*, 03–CV–0039 (FB) (LB), 2003 WL 22937683, at \*8 (E.D.N.Y. Dec. 2, 2003) (dismissing false arrest claim when plaintiff alleged she had been interrogated for more than five hours by her employer's lawyers); *cf. United States v. Hooper*, 935 F.2d 484, 490 (2d Cir. 1991) (explaining that an individual is not "seized" for Fourth Amendment purposes when he or she "agrees to speak to a law enforcement officer absent any duress or coercion").

Here, the Complaint falls far short of adequately alleging that the University confined or intended to confine plaintiff during his interview.  The Complaint alleges only that University employees (**i**) asked plaintiff to attend a voluntary interview, (**ii**) questioned plaintiff for 20 minutes, and (**iii**) falsely informed plaintiff that they had a video of him driving recklessly but could not show it to him.  FAC ¶¶ 21, 25, 31.  There is no allegation that University employees restrained plaintiff, told plaintiff he could not leave the interview, or engaged in intimidating conduct that would have communicated to plaintiff that he was not free to leave, *see, e.g.*, *Copantitla*, 788 F. Supp. 2d at 294, *Lee*, 1998 WL 107119, at \*4-5.  While plaintiff was ultimately arrested in connection with Corpuz's allegations, the arrest was effectuated by NYPD officers—not University employees—after the University's interview had concluded.

6

FAC ¶¶ 31, 36. Thus, on the face of the Complaint, there is no indication that agents of the University confined plaintiff or subjected him to the kind of threatening conduct that can give rise to a claim of false imprisonment.

Even if plaintiff had adequately alleged that the University confined or intended to confine him during his interview, he has likely failed to allege that he did not consent to the purported confinement. A plaintiff cannot sustain a false imprisonment claim if he consented to his confinement. *Hernandez*, 939 F.3d at 199; *see Keith v. City of New York*, No. 11-CV-3577 (KPF), 2014 WL 6750211, at *11-13 (S.D.N.Y. Dec. 1, 2014), *aff'd*, 641 F. App'x 63 (2d Cir. 2016); *see also Rendely v. Town of Huntington*, No. 2:03-CV-3805 (ENV), 2006 WL 5217083, at *5 (Aug. 30, 2006) (collecting cases). Here, the Complaint alleges that plaintiff "was instructed to go to the Public Safety Office on the campus of [the University], and they *jointly agreed* to have him come to the office on April 4, 2019." FAC ¶ 21 (emphasis added). Plaintiff's "joint[] agree[ment]" to meet with University employees indicates that he consented to be interviewed. There is no allegation that University public safety officers told plaintiff he was required to attend the interview or otherwise coerced plaintiff into attending the interview. Nevertheless, because the parties have not briefed whether plaintiff adequately alleged the absence of consent, I refrain from dismissing plaintiff's false imprisonment claim on that basis.

### 2.   Plaintiff Fails to Allege that the University Affirmatively Procured or Instigated Plaintiff's Arrest By the NYPD

The Complaint also fails to state a claim for false arrest on the basis that the University affirmatively procured or instigated plaintiff's arrest by NYPD officers. A private defendant can be liable for false arrest if the defendant "affirmatively induced" an arresting officer to make the arrest at issue. *Curley v. AMR Corp.*, 153 F.3d 5, 13-14 (2d Cir. 1998). Examples of affirmative

inducement include a defendant's "taking an active part in the arrest and procuring it to be made" and a defendant's acting with "active, officious and undue zeal to the point where the officer is not acting of his own volition." *Ibid.* In contrast, a party who simply supplies information to the police is not liable for false imprisonment when "police independently act to arrest a suspect on information provided by [that] party"—even if "the information provided is later found to be erroneous." *King*, 111 F.3d at 257.

Here, the Complaint fails to allege that the University "affirmatively induced" the NYPD to arrest plaintiff. *Curley*, 153 F.3d at 13-14. The Complaint does not allege that the University had any contact or communications with the NYPD regarding plaintiff. Plaintiff has attempted to fill that gap by alleging in briefing and at oral argument that University employees falsely "told the [NYPD] detective" that they had a "video of [plaintiff] committing the crime," Pl.'s Mem. of L. in Opp'n to Def.'s Mot. to Dismiss ("Opp'n Mem.") 4 (Dkt. #42), and called the NYPD to the University public safety office so that plaintiff could be arrested. But these supplemental allegations are unavailing—whether they would be adequate to support a claim of inducement or not—because they are not contained in the Complaint. *Leonard F.*, 199 F.3d at 107. Thus, the Complaint does not raise an inference that the University affirmatively induced the NYPD to arrest plaintiff.

### B.     Plaintiff Fails to State a Claim Against the University for Common Law Malicious Prosecution

Plaintiff has also failed to adequately plead a claim of malicious prosecution against the University. To state a claim of malicious prosecution under New York common law, a plaintiff must allege that (**i**) the defendant initiated a prosecution against him, (**ii**) the defendant lacked probable cause to believe the prosecution could succeed, (**iii**) the proceeding was begun with

malice, and (**iv**) the matter terminated in the plaintiff's favor. *Cameron v. City of N.Y.*, 598 F.3d 50, 63 (2d Cir. 2010). Here, the Complaint fails to state two elements: initiation of the prosecution and malice.

### 1.    Plaintiff Fails to Allege that the University Initiated His Prosecution

Plaintiff has not adequately pleaded that the University—a private party—initiated his prosecution. To bring a malicious prosecution claim against a private party, a plaintiff must allege that the defendant played an "active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." *Rothstein v. Carriere*, 373 F.3d 275, 294 (2d Cir. 2004). It is not enough, by contrast, to merely allege that the defendant furnished information to the authorities. *See id.* at 294-95. The Complaint fails to adequately plead that the University initiated plaintiff's prosecution under these standards. As noted above, there is no allegation in the Complaint that the University ever contacted or communicated with officers of the NYPD—let alone advised, encouraged, or importuned NYPD officers to arrest plaintiff. While plaintiff has alleged in his brief and at oral argument that the University "handed over plaintiff" to the NYPD, Opp'n Mem. at 4, I may not consider such supplemental allegations when resolving a motion to dismiss. *Leonard F.*, 199 F.3d at 107. Accordingly, plaintiff has failed to allege a required element of a malicious prosecution claim.

### 2.    Plaintiff Failed to Allege that the University Acted with Malice

Plaintiff has also failed to adequately plead the malice element of a malicious prosecution claim. To plead malice, a complaint must allege "the prosecution complained of was undertaken from improper or wrongful motives, or in reckless disregard of the rights of the plaintiff." *Pinsky v. Duncan*, 79 F.3d 306, 313 (2d Cir. 1996). Plaintiff has not alleged or created the inference that the University acted with malice. Even if the University furnished critical information to the police

or prosecutors, there is no allegation in the Complaint suggesting that the University was aware the information it passed on was false or misleading.  On the contrary, the Complaint specifically alleges that Corpuz lied to the University security officers and that she never corrected her false statements—suggesting that the University was an unwitting accomplice to Corpuz's scheme. FAC ¶ 68. Thus, plaintiff has failed to allege the malice element of his common law malicious prosecution claim.

**IV.      Conclusion**

The University's motion to dismiss all claims against it is granted.

SO ORDERED.

*/s/ Rachel Kovner*
RACHEL P. KOVNER
United States District Judge

Dated: September 13, 2020
         Brooklyn, New York