UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
KEVIN JIANG,                                               19-cv-05664-RPK-ST

                    Plaintiff,                           **SECOND AMENDED COMPLAINT**

                                                                   **JURY TRIAL DEMANDED**

              -against-

BRIANA CORPUZ,
NYPD DETECTIVE CAROLYN CELONA,
NYPD DETECTIVE ALARTOSKY,

                    Defendants.
-------------------------------------------------------------------X

        Plaintiff KEVIN JIANG, by his attorney, Fred Lichtmacher of The Law Office of Fred Lichtmacher P.C., complaining of the defendants herein, respectfully alleges as follows:

## JURISDICTION AND VENUE

1.      This action arises under federal law more specifically pursuant to 42 U.S.C. §1983 and the Fourth, Sixth, and Fourteenth Amendments to the United States Constitution as well as pursuant to the common law of the State of New York.

2.      Pursuant to 28 U.S.C. §1391(b)(2), venue is proper in the Eastern District of New York, as events forming the basis of the Complaint occurred in that District, and subject matter jurisdiction is conferred pursuant to 28 U.S.C. §§ 1331 and 1343 (a) (3 & 4) and plaintiff's state law claims are properly before this Court pursuant to 28 U.S.C. § 1367.

## PARTIES

3.      At all times relevant plaintiff KEVIN JIANG was a resident of the City and State of New

1

York in the County of Queens and he is an Asian-American male.

4. Defendant, BRIANA CORPUZ, was, and upon information and belief still is, a resident of the County of Queens in the City and State of New York.

5. Defendant NYPD DETECTIVE CAROLYN CELONA, at all times relevant, was a member of the New York City Police Department (hereinafter, NYPD), stationed at the Queens Detective Area 107 and she is sued herein in her capacity as an individual.

6. Defendant DETECTIVE CELONA was at all times relevant acting as a state actor acting under color of law as an employee of NYC and she is liable for directly participating in the acts described herein.

7. Defendant NYPD DETECTIVE ROBERT ALARTOSKY, at all times relevant, was a member of the New York City Police Department (hereinafter, NYPD), stationed at the Queens Detective Area 107 and he is sued herein in his capacity as an individual.

8. Defendant DETECTIVE ROBERT ALARTOSKY was at all times relevant acting as a state actor acting under color of law as an employee of NYC and he is liable for directly participating in the acts described herein.

9. This action arises under the United States Constitution, particularly under the provisions of the Fourth, Sixth, and Fourteenth Amendments and under the Civil Rights Act, Title 42 of the United States Code, Section 1983 as well as pursuant to the common law of the State of New York.

## FACTS UNDERLYING
## PLAINTIFF'S CLAIMS FOR RELIEF

10. On March 25, 2019, at 9:28 p.m., Defendant Corpuz, an acquaintance of Plaintiff's,

contacted him and informed him that she was going to be creating a false story that she had loaned the plaintiff her car on that same date, March 25, 2019.

11.     Defendant Corpuz told the plaintiff that her boyfriend, an Asian male, was banned from being on the SJU campus, so she needed the plaintiff to lie because her boyfriend had been driving her car illegally on the SJU campus on March 25, 2019.

12.     Upon information and belief, Defendant Corpuz knew that her boyfriend had attempted and/or threatened to hit a pedestrian with her car on the SJU campus on March 25, 2019, and she did not want her boyfriend to be arrested.

13.     Because plaintiff and Defendant Corpuz' boyfriend are both Asian Defendant Corpuz hoped if her boyfriend had been spotted on campus, she could have alleged it was actually the plaintiff and not her boyfriend driving on the campus, and driving illegally and recklessly.

14.     Plaintiff informed Defendant Corpuz he would not lie for her.

15.     Defendant Corpuz called the plaintiff back at 9:45 pm on the same evening and told the plaintiff that she had someone else to lie for her and that she now just needed the plaintiff to lie and say he was in the car, not as the driver, which he also refused to do.

16.     Upon information and belief, Defendant Corpuz knew that her boyfriend was driving her car and driving it recklessly on the SJU campus where he was not even allowed to be present on the grounds.

17.     Defendant Corpuz called the plaintiff back again shortly thereafter but on that occasion she spoke with someone other than the plaintiff.

18.     Defendant Corpuz was contacted by SJU Security who had a video showing her license plate as a car which made two apparent intentional attempts to run over a pedestrian on the SJU

campus.

19.     Defendant Corpuz was contacted by both SJU Security and by the NYPD and she falsely alleged to both, first that the plaintiff was her boyfriend, and more importantly that the plaintiff was driving her car, which had been driven recklessly, on the SJU Campus on March 25, 2019.

20.     The face of the person in the video in the possession of SJU Security is clearly not visible, and is in no way identifiable as plaintiff.

21.     The aforementioned video only clearly shows the license plate of Defendant Corpuz's car.

22.     The NYPD officers assigned to investigate the incident performed no examination of Defendant Corpuz's claims, and did not even speak to her, but set up a photo array containing Plaintiff's photograph based solely on her statement.

23.     Defendant Corpuz has a history of lying to the police and upon information and belief Detective Celona was fully aware of those situations in which Corpuz had lied.

24.     Nevertheless, based on Defendant Corpuz's word and the fact that plaintiff is of Asian descent, Detectives Celona and Alartosky proceeded with an identification procedure in an effort to identify Jiang as the perpetrator.

25.     On March 28, 2019, Robert Distasio ("Distasio"), the victim in the aforementioned March 25, 2019 incident, viewed a photo array at the 107th Precinct which was prepared by Defendant Alartosky, and administered by Detective Shawn Johnston.

26.     The photo array consisted of six photographs inserted into a holder with six spaces for photographs, each of which was numbered from 1 to 6.

27.     Detective Alartosky ("Alartosky") prepared the photo array viewed by Distasio.

28.     In order to prepare the array, Alartosky obtained a photograph of plaintiff from the

Department of Motor Vehicles.

29. Said photograph depicted plaintiff's face against a light colored, possibly white, background, and it was placed in the center of the top row of the array, in the position numbered "2."

30. Alartosky obtained five other photographs of persons who were of similar descent from the NYPD Adult Suspect Database to serve as "filler."

31. These filler photographs depicted five males who appear to be of Asian descent and roughly the same age as plaintiff.

32. The five filler photographs depicted faces against the same dark background, which is a grey verging on black, and were arranged around Mr, Jiang's photo in positions 1, 3, 4, 5, and 6, serving as a visual frame; the background for the photographs looked entirely distinguishable from that in which Plaintiff was displayed.

33. Defendant Alartosky made no effort to cure this problem, despite the fact that the array was created manually, and he could have cut around the profiles of the subjects, or employed some other method to ensure that the array was not overtly suggestive.

34. Defendant Alartosky handed this array to Detective Shawn Johnston, who administered the photo array identification procedure in a double blind procedure.

35. Distasio understood the white background, which, along with the top row center placement of Mr. Jiang's photo in the array, caused it to stand out, as a signal that the police officers wanted to highlight Mr. Jiang and encourage Mr. Distasio to identify him.

36. Mr. Distasio testified that he identified the photograph of Mr. Jiang as belonging to the person who had "tried to run him over" solely based on the overtly suggestive array.

37. Ascertaining and memorializing a witness' confidence in an identification from a photo array is known as a "Confidence Statement" and is a requirement with its own section on NYPD's photo array documentation and forms.

38. After Mr. Distasio identified Mr. Jiang, despite his statement that he had not clearly seen the perpetrator's face at any time, no known or documented effort was made to ascertain his level of confidence in the identification.

39. On or about the week of April 1, 2019, Mr. Jiang was contacted by a security officer from St. Johns Public Safety and he was instructed to go to the Public Safety Office on the campus of SJU, and they jointly agreed to have him come to the office on April 4, 2019.

40. Mr. Jiang, then a student at SJU, appeared at the office as scheduled on April 4, 2019 and spoke with an security officer from St Johns Public Safety.

41. Mr. Jiang was questioned by the security officer about the incident on March 25, 2019 on the SJU Campus in which someone had driven recklessly and came close to striking an individual twice.

42. Mr. Jiang told the security officer about the telephone calls from Defendant Corpuz in which she had asked him to lie and who the actual driver of the car was.

43. The security officer doing the questioning, alleged there was a video showing Mr. Jiang was the perpetrator of the crime, but claimed that he was not allowed to show Mr. Jiang the video; both these statements were false.

44. Prior to Mr. Jiang being called by the security officer, Defendant Corpuz had falsely reported to SJU the lie she tried to get Mr. Jiang to go along with, that she had loaned the plaintiff her car on March 25, 2019 and that Plaintiff was the person driving recklessly on the

SJU campus.

45.     Ms. Corpuz played an active role in the arrest and prosecution of the plaintiff via her intentional fabrications meant to have the plaintiff arrested in place of her boyfriend.

46.     Ms. Corpuz's lies and her refusal to retract her lies at any time during between the incident and Plaintiff's trial, were intended to protect her boyfriend and cause the plaintiff to be arrested and prosecuted in his place.

47.     Mr. Jiang was questioned for approximately 20 minutes and approximately 10 minutes and after the interview concluded, Detective Celona appeared at the SJU Security Office and took Plaintiff to the 107th Detective Squad.

48.     At the 107th Detective Celona spoke with Mr. Jiang and he informed her of Briana Corpuz asking him to lie.

49.     Defendant Celona acknowledged knowing Defendant Corpuz and that she had interacted with her in a professional capacity, whereupon Plaintiff reminded her of an alleged dog napping, one of the occasions on which Corpuz had made false statements to the police, but Celona proceeded to arrest Plaintiff.

50.     Mr. Jiang was handcuffed and brought to Queens Central Booking on a felony charge where he was forced to spend the night in a cell with several alleged criminals whose charges included drug possession with intent to sell, illegal possession of firearms and assault.

51.     After close to 24 hours, Mr. Jiang was arraigned on the false charges which were later reduced from felony reckless endangerment to an A misdemeanor, PL 120.20, Reckless Endangerment in the Second degree, and he was released on his own recognizance.

52.     Mr. Jiang was forced to retain an attorney costing him $5,000, he had to make 3 court

appearances, and he faced time in jail and imminent suspension from school until the false charges were ultimately dismissed and sealed on the motion of the Queens District Attorney on July 11, 2019.

53.     Throughout the entirety of the prosecution of the plaintiff, Defendant Corpuz cooperated and played an active role in prosecuting the plaintiff and never provided information to the SJU Security, the NYPD or the Queens District Attorney's office that the plaintiff was in fact not the driver of her car on March 25, 2019.

54.     While at the 107th precinct, later at Central Booking and prior to each court appearance, Mr. Jiang suffered uncontrollable trembling, cold sweats and racing thoughts among other symptoms of stress.

55.     Mr. Jiang was embarrassed, humiliated, he was imprisoned, he was harmed pecuniarily and he was otherwise harmed.

**FIRST CLAIM FOR RELIEF ON BEHALF OF PLAINTIFF
VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS
TO THE UNITED STATES CONSTITUTION
<u>VIA FALSE ARREST</u>**

56.     Plaintiff repeats, reiterates and realleges each and every allegation contained in the prior paragraphs as if fully stated herein.

57.     Mr. Jiang's rights have been violated pursuant to the Fourth Amendment of the United States Constitution made applicable to the states by virtue of the Fourteenth Amendment and pursuant to 42 U.S.C. § 1983, due to his being falsely arrested by Defendant Detectives Celona, and Alartosky.

58.     The plaintiff was confined by the defendants; Defendants intended to confine the

8

plaintiff; Plaintiff was conscious of his confinement; and the plaintiff did not consent to the confinement which was not otherwise privileged.

59. As a direct consequence of Defendants' actions, the plaintiff was deprived of rights, privileges and immunities pursuant to the Fourth and Fourteenth Amendments of the United States Constitution and more particularly, his right to be free from arrest without probable cause.

60. Defendants' actions resulted in the plaintiff being arrested, handcuffed, being held in custody over night, being searched, causing the plaintiff to endure the fear of going to jail, he suffered various emotional harms, he was defamed in his community, he incurred pecuniary damages and he was otherwise harmed.

61. By reason of the aforesaid, the plaintiff has been damaged and he is entitled to compensatory damages in a sum not less than $250,000.00 (TWO HUNDRED AND FIFTY THOUSAND) DOLLARS, punitive damages in an amount to be determined at trial and plaintiff is entitled to an award of attorneys' fees and costs pursuant to 42 USC §1988.

### SECOND CLAIM FOR RELIEF ON BEHALF OF PLAINTIFF
### VIOLATION OF THE COMMON LAW
### OF THE STATE OF NEW YORK
### VIA FALSE IMPRISONMENT

62. Plaintiff repeats, reiterates and realleges each and every allegation contained in the prior paragraphs as if fully stated herein.

63. Mr. Jiang's rights have been violated pursuant to the common law of the State of New York, due to his being falsely imprisoned due to the actions of Defendant Corpuz.

64. Ms. Corpuz lied to the SJU security and to the police intending to have Mr. Jiang arrested and prosecuted on false charges to cover for her boyfriend who had committed the crime Mr.

Jiang was falsely alleged to have committed.

65. Ms. Corpuz played an active role in the arrest of Mr. Jiang in that she provided the false information to the SJU security and to the police causing Mr. Jiang's arrest.

66. In this way, Ms. Corpuz initiated and caused the plaintiff's arrest and his prosecution.

67. The plaintiff was confined due to the actions of the Ms. Corpuz; Defendant intended to confine the plaintiff; Plaintiff was conscious of his confinement; and the plaintiff did not consent to the confinement which was not otherwise privileged.

68. As a direct consequence of Defendant Corpuz' actions, the plaintiff was deprived of rights, privileges and immunities pursuant to the common law of the State of New York, to wit, his right to be free from arrest without probable cause.

69. Defendant's actions resulted in the plaintiff being arrested, handcuffed, being held in custody over night, being searched, causing the plaintiff to endure the fear of going to jail, he suffered various emotional harms, he was defamed in his community, he incurred pecuniary damages and he was otherwise harmed.

70. By reason of the aforesaid, the plaintiff has been damaged and he is entitled to compensatory damages in a sum not less than $250,000.00 (TWO HUNDRED AND FIFTY THOUSAND) DOLLARS and punitive damages in an amount to be determined at trial.

### THIRD CLAIM FOR RELIEF ON BEHALF OF PLAINTIFF
### VIOLATION OF THE FOURTH
### AMENDMENT TO THE UNITED STATES CONSTITUTION
### VIA MALICIOUS PROSECUTION

71. Plaintiff repeats, reiterates and realleges each and every allegation contained in the prior paragraphs as if fully stated herein.

72. Mr. Jiang's rights have been violated pursuant to the Fourth Amendment of the United States Constitution made applicable to the states by virtue of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983, due to his being maliciously prosecuted by the defendants Detective Celona, and Alartosky.

73. Plaintiff was subjected to a malicious prosecution by the defendants who caused and continued his arrest; without probable cause; the arrest was effected with malice; plaintiff was incarcerated and forced to appear in court three times, and the charges terminated in Mr. Jiang's favor via a dismissal upon motion of the Office of the District Attorney.

74. Defendants disingenuously informed the District Attorney that the plaintiff had committed crimes without having probable cause to believe he had in fact committed any crimes and the defendants generated and forwarded documents to the District Attorney which repeated the false allegations.

75. Defendants' actions resulted in the plaintiff being arrested, handcuffed, being held in custody, being searched, being forced to make court appearances, causing the plaintiff to endure the fear of going to jail, he suffered various emotional harms, he was defamed in his community, he incurred pecuniary harms and he was otherwise harmed.

76. By reason of the aforesaid, the plaintiff has been damaged and he is entitled to compensatory damages in a sum not less than $500,000.00 (FIVE HUNDRED THOUSAND) DOLLARS, punitive damages in an amount to be determined at trial and plaintiff is entitled to an award of attorneys' fees as well as costs pursuant to 42 USC §1988.

### FOURTH CLAIM FOR RELIEF ON BEHALF OF PLAINTIFF
### VIOLATION OF THE COMMON LAW OF THE STATE OF NEW YORK
### VIA MALICIOUS PROSECUTION

77. Plaintiff repeats, reiterates and realleges each and every allegation contained in the prior paragraphs as if fully stated herein.

78. Mr. Jiang's rights have been violated pursuant to the common law of the State of New York, due to his being maliciously prosecuted due to the actions of Defendant Corpuz.

79. Ms. Corpuz lied to the SJU security and to the NYPD intending to have Mr. Jiang arrested and prosecuted on false charges to cover for her boyfriend who had committed the crime Mr. Jiang was alleged to have committed.

80. At no point during the months long prosecution of the plaintiff did Ms. Corpuz correct her fabricated statements to the SJU Security and to the NYPD.

81. Ms. Corpuz played an active role in the arrest of Mr. Jiang in that she provided the false information to the SJU security and to the police causing Mr. Jiang's arrest and prosecution.

82. In this way, Ms. Corpuz initiated and caused the plaintiff's arrest and his prosecution.

83. Plaintiff was subjected to a malicious prosecution by the defendant who caused and continued his arrest; without probable cause; the arrest was effected with malice; and the charges terminated in Mr. Jiang's favor via a dismissal upon the motion of the Office of the Queens District Attorneys' Office.

84. Defendant disingenuously caused the District Attorney to be informed that the plaintiff had committed crimes without having probable cause to believe he had in fact committed any crimes and the defendants generated documents and/or passed on information which was forwarded to the District Attorney which repeated the false allegations.

85. Defendant's actions resulted in the plaintiff being arrested, handcuffed, being held in custody, being searched, being forced to make court appearances, causing the plaintiff to endure

the fear of going to jail, various emotional harms, he was defamed in his community, he incurred pecuniary harms and he was otherwise harmed.

86. By reason of the aforesaid, the plaintiff has been damaged and he is entitled to compensatory damages in a sum not less than $500,000.00 (FIVE HUNDRED THOUSAND) DOLLARS and punitive damages in an amount to be determined at trial.

### FIFTH CLAIM FOR RELIEF ON BEHALF OF PLAINTIFF
### VIOLATION OF PLAINTIFF'S FOURTH, SIXTH, AND FOURTEENTH AMENDMENT RIGHTS VIA DENIAL OF HIS RIGHT TO A FAIR TRIAL, i.e., DEPRIVATION OF LIBERTY WITHOUT DUE PROCESS

87. Plaintiff repeats the allegations contained in the prior paragraphs as if fully stated herein.

88. Mr. Jiang was denied his right to a fair trial i.e., he was subjected to a deprivation of liberty without due process in violation of the Fourth, Sixth and the due process clause of the Fourteenth Amendment by Defendants Detective Celona and Detective Alartosky, who created false information and caused that information to be provided to the District Attorney.

89. The defendants caused information to be forwarded to prosecutors which they had reason to know to be false and said false information was almost certain to influence a jury's verdict, and in so doing Mr. Jiang was denied his right to a fair trial and he was thereby damaged.

90. Defendants' actions resulted in the plaintiff being arrested, handcuffed, being held in custody, being searched, being forced to appear in court three times, caused the plaintiff to endure the fear of going to jail, various emotional harms, he was defamed in his community, he incurred pecuniary harms and he was otherwise harmed.

91. By reason of the aforesaid, the plaintiff has been damaged and he is entitled to compensatory damages in a sum not less than $500,000.00 (FIVE HUNDRED THOUSAND)

DOLLARS, punitive damages in an amount to be determined at trial and plaintiff is entitled to an award of attorneys' fees and costs pursuant to 42 USC §1988.

**WHEREFORE,** plaintiff respectfully request that judgment be entered as follows:

(A) Declaratory relief finding that plaintiff Kevin Jiang's rights under the United States Constitution as well as pursuant to the common law of the State of New York were violated;

(B) Compensatory damages to be determined at trial in a sum of not less than $500,000.00 (FIVE HUNDRED THOUSAND) DOLLARS;

(C) By reason of the wanton, willful and malicious character of the conduct complained of herein, punitive damages against the defendants in amounts to be determined at trial;

(D) An award to plaintiff of the costs and disbursements herein;

(E) An award of attorneys' fees pursuant to 42 U.S.C. §1988 on plaintiff's federal causes of action; and

(F) Such other and further relief as this Court may deem just and proper.

Dated: New York, New York
June 2, 2021

      / s /
FRED LICHTMACHER
The Law Office of Fred Lichtmacher P.C.
Attorney for Plaintiff
116 West 23rd Street Suite 500
New York, New York 10011

Empirestatt@aol.com  
Tel. No. (212) 922-9066  
**During the Pandemic please use**  
**(646) 318-3806**

To:    BRIANA CORPUZ  
        By Steven M, Warshawsky

        Detective Carolyn Celona  
        By Ladonna Sanford

        Detective Robert Alartoski  
        107th Detective Squad  
        71-01 Parsons Blvd  
        Fresh Meadows, NY 11365