UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
KEVIN JIANG,

                         Plaintiff,                           **MEMORANDUM AND ORDER**

              v.                                          19-CV-05664 (RPK)

BRIANA CORPUZ,
NYPD DETECTIVE CAROLYN
CELONA, NYPD DETECTIVE ROBERT
ALARTOSKY,

                      Defendants.
-----------------------------------------------------------x
RACHEL P. KOVNER, United States District Judge:

      Plaintiff Kevin Jiang brings this action against Briana Corpuz and New York Police Department Detectives Carolyn Celona and Robert Alartosky. Plaintiff alleges Corpuz violated New York law by falsely imprisoning and maliciously prosecuting him. He alleges the NYPD Detectives violated 42 U.S.C. § 1983 by falsely arresting him, maliciously prosecuting him, and denying him a fair trial. All defendants have moved for summary judgment. For the reasons explained below, the detectives are entitled to summary judgment on the claims against them. I decline to exercise supplemental jurisdiction over plaintiff's remaining state-law claims against Corpuz.

## BACKGROUND

      The facts in this section are taken from the parties' exhibits and plaintiff's response to defendants' statements of facts filed in accordance with Local Rule 56.1. *See* Fed. R. Civ. P. 56(c)(1). Local Rule 56.1 "deems admitted each numbered paragraph in [a] statement of material facts" that is not specifically controverted in an opposing Local Rule 56.1 statement, *Freistat v. Gasperetti*, No. 17-CV-5870 (RPK) (LB), 2021 WL 4463218, at *1 (E.D.N.Y. Sept.

1

29, 2021) (quotation marks omitted), but "the Court will not consider assertions for which no citations to record are provided . . . that are merely legal arguments, . . . or [that are] directly contradicted by or not patent from evidence in the record," *Sanders v. City of New York*, No. 16-CV-6526 (CBA) (SJB), 2021 WL 4395219, at *3 n.8 (E.D.N.Y. June 15, 2021), *R. & R. adopted*, No. 16-CV-6526 (CBA) (SJB), 2021 WL 4350487 (E.D.N.Y. Sept. 24, 2021). This narrative also draws on unambiguous video footage when available. *See Scott v. Harris*, 550 U.S. 372, 380–81 (2007); *Pratt v. Nat'l R.R. Passenger Corp.*, 709 F. App'x 33, 34 (2d Cir. 2017).

Plaintiff and Corpuz attended Saint John's University together in 2019. Pl.'s Resp. to Def. Corpuz's 56.1 Statement ("Corpuz Rule 56.1 Resp.") (Dkt. #98) ¶¶ 2–3, 14.[*] Plaintiff is an Asian-American male, as is Corpuz's then-husband, Song Hun "Peter" Kim. *Id*. ¶¶ 1, 6, 8; Pl.'s Resp. to Defs.' Celona and Alartosky's 56.1 Statement ("NYPD Rule 56.1 Resp.") (Dkt. #93) ¶ 8.

On the evening of March 25, 2019, Kim drove Corpuz in Corpuz's car, a white Infiniti sedan, to the SJU campus. Corpuz Rule 56.1 Resp. ¶ 21; *see* Decl. of Attorney Fred Lichtmacher in Opp'n. to Mot. for Summ. J. ("Lichtmacher Decl.") Ex. 6 ("Criminal Compl.") (Dkt. #99-6) 2. After dropping Corpuz off for class just after 7 p.m., Kim continued to drive Corpuz's car on SJU's campus. Corpuz Rule 56.1 Resp. ¶¶ 21–22. He closely passed Robert DiStasio at a high speed. *Id*. ¶¶ 24–26; Decl. of Steven M. Warshawsk in Supp. of Def. Corpuz Mot. for Summ. J. ("Warshawsk Decl.") Ex. 13 (Dkt. #95-13) 00:00–00:07. He then turned around and again closely passed DiStasio at a high speed, causing DiStasio to jump out of the way. Corpuz Rule 56.1 Resp. ¶¶ 27, 31–32; Warshawsk Decl. Ex. 12 (Dkt. #95-12) 00:00–00:04. DiStasio had an "okay look" at the driver's face through the car's tinted window, but he could only identify the

---

[*] All citations use the ECF pagination unless otherwise noted.

driver as an Asian male. Warshawsk Decl. Ex. 5 (Dkt. #95-5) 6, 20; NYPD Rule 56.1 Resp. ¶¶ 1–2.

DiStasio reported the incident to campus security. Warshawsk Decl. Ex. 5 (Dkt. #95-5) 4. Campus security, in turn, reported the incident to the NYPD. Corpuz Rule 56.1 Resp. ¶¶ 34–35; NYPD Rule 56.1 Resp. ¶¶ 1–3. After reviewing the security footage, campus security linked the car's license plate to Corpuz and passed this information along to the NYPD. Corpuz Rule 56.1 Resp. ¶¶ 34–35; NYPD Rule 56.1 Resp. ¶¶ 3–5.

NYPD Officer Christopher Conaghan called Corpuz shortly after 9 p.m. Corpuz Rule 56.1 Resp. ¶¶ 36–38; NYPD Rule 56.1 Resp. ¶ 5. The officer asked Corpuz "who dropped you off to class, who was driving your car then," and Corpuz responded "my friend Kevin . . . Jiang." Warshawsk Decl. Ex. 14 (Dkt. #95-14) 01:30–01:55; Corpuz Rule 56.1 Resp. ¶ 43. Around 9:35 p.m. that evening, Officer Conaghan texted Corpuz "[w]ho was driving your car when you got dropped off at class tonight." Lichtmacher Decl. Ex. 1 (Dkt. #99-1) 2. Corpuz again responded "Kevin Jiang." *Ibid*. This was Corpuz's last interaction with the NYPD or campus security. Lichtmacher Decl. Ex. 9 ("Alartosky Depo.") (Dkt. #99-9) 60–61.

Officer Conaghan filed the initial police report. Decl. of Bilal Haider in Supp. of Defs. Celona's and Alartosky's Mot. for Summ. J. Ex. C ("NYPD Report") (Dkt. #87-3) 2; NYPD Rule 56.1 Resp. ¶ 4. The report stated that Corpuz had informed Officer Conaghan that plaintiff was driving her car at the time when the car was allegedly used to attempt to hit DiStasio. NYPD Report 2.

Detective Robert Alartosky then conducted further investigation. NYPD Rule 56.1 Resp. ¶ 9. He reviewed Officer Conaghan's report, as well as SJU's video footage. *Id*. ¶ 10. He interviewed DiStasio and obtained plaintiff's DMV photo. *Id*. ¶¶ 11–12. He also asked another

3

detective to have DiStasio review a photo array to seek to identify the driver who had attempted to hit him. *Id*. ¶ 14. The photo array included plaintiff's DMV photo, with a "lighter" or "white" background, as well as five mugshots with "shadowy gray" backgrounds. Corpuz Rule 56.1 Resp. at ¶¶ 73–74. The mugshots showed Asian males appearing similar to plaintiff in age. *Ibid*.; NYPD Rule 56.1 Resp. ¶ 13. The detective administering the photo array instructed the victim to "[p]ay no attention to any markings that may appear on the photos or any other difference in the type or style of the photographs." NYPD Rule 56.1 Resp. ¶¶ 15–16.

DiStasio selected plaintiff's DMV photo as the driver. *Id*. ¶ 17. Later, in a deposition, DiStasio stated that the lighter photo background had led him to pick plaintiff's photo and that, based on the background, he had believed that the "police officers were trying to [visually] sway [him] to pick out [plaintiff's picture]." Lichtmacher Decl. Ex. 8 ("DiStasio Depo.") (Dkt. #99-8) 19–20.

After DiStasio's photo-array identification of plaintiff, Detective Alartosky issued an I-Card stating that there was probable cause for plaintiff's arrest. NYPD Rule 56.1 Resp. ¶ 18.

Detective Carolyn Celona arrested plaintiff on April 4, 2019. *Id*. ¶ 19.[*] The next day, plaintiff was arraigned and the Queens County District Attorney charged him with reckless endangerment in the second degree under New York Penal Law § 120.20. Criminal Compl. 2;

---

[*] Coincidentally, Detective Celona had interacted with Corpuz previously. Approximately two or three of these prior interactions were connected with domestic-violence allegations and one involved a reported dog theft. Lichtmacher Decl. Ex. 10 ("Celona Depo.") (Dkt. #99-10) 14–15; Lichtmacher Decl. Ex. 3 ("Corpuz First Depo.") (Dkt. #99-3) 16–17; Lichtmacher Decl. Ex. 2 ("Corpuz Second Depo.") (Dkt. #99-2) 11–13 (recounting discussion with Detective Celona about the dog-theft report). The dog-theft interaction occurred after Corpuz reported her dog as stolen to SJU security. Corpuz Second Depo. 11–13. In fact, Corpuz's then-boyfriend, Peter Kim, and friends had taken the dog. *Ibid*. After the dog was returned to Corpuz, she told SJU the matter was resolved and had the "perpetrators" tell SJU they were just watching her dog during the time it was missing. *Ibid*. SJU security then closed the report. *Ibid*. At the direction of SJU security officers, after reporting the dog incident as resolved, Corpuz also spoke with Detective Celona. *Ibid*. Neither Corpuz nor Detective Celona remember what was specifically said during that conversation. *Ibid*.; Celona Depo. 14–15.

4

Alartosky Depo. 63–64; Corpuz Rule 56.1 Resp. ¶ 87; Lichtmacher Decl. Ex. 4 (Dkt. #99-4) 79–80; NYPD Rule 56.1 Resp. ¶¶ 19–20.

On July 11, 2019, that charge was dismissed. Corpuz Rule 56.1 Resp. ¶¶ 97–98, 100–101; NYPD Rule 56.1 Resp. ¶ 21.

Plaintiff filed this lawsuit on in 2019. The operative second amended complaint alleges that Detectives Celona and Alartosky violated Section 1983 through false arrest, malicious prosecution, and denial of a fair trial. Second Am. Compl. ("SAC") (Dkt. #68) 8–13. Plaintiff also brings claims for false imprisonment and malicious prosecution under New York law against Corpuz. *Ibid*.

Defendants have moved for summary judgment on all claims. Mot. for Summ. J. by Defs. Carolyn Celona and Robert Alartosky (Dkt. #85); Mot. for Summ. J. by Def. Briana Corpuz (Dkt. #89).

## STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is material if it might affect the outcome of the suit under the governing law." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (quoting *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). In assessing the record, the Court views "the evidence in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Tracy v. Freshwater*, 623 F.3d 90, 95 (2d Cir. 2010).

# DISCUSSION

Detectives Celona and Alartosky are entitled to judgment as a matter of law on all claims and their motion for summary judgment is granted. Plaintiff's false-arrest and malicious-prosecution claims fail because the detectives are entitled to qualified immunity. And plaintiff abandoned his fair-trial claim. I decline to exercise supplemental jurisdiction over the remaining state-law claims against Corpuz and her motion for summary judgment is denied without prejudice.

## I. Detectives Celona and Alartosky Are Entitled to Summary Judgment.

Detectives Celona and Alartosky are entitled to qualified immunity and, in turn, summary judgment on plaintiff's false-arrest and malicious-prosecution claims. The detectives are also separately entitled to summary judgment on plaintiff's fair-trial claim.

### A. Plaintiff's False-Arrest and Malicious-Prosecution Claims Fail as a Matter of Law.

Detectives Celona and Alartosky are entitled to summary judgment on plaintiff's false-arrest and malicious-prosecution claims. As a general matter, probable cause at the time of arrest is a complete defense to a claim of false arrest, *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014), and to a claim of malicious prosecution so long as there is no "indication that the authorities became aware of exculpatory evidence between the time of the arrest and the subsequent prosecution that would undermine the probable cause which supported the arrest," *Rae v. Cnty. of Suffolk*, 693 F. Supp. 2d 217, 226 (E.D.N.Y. 2010) ("Plaintiff has . . . failed to dissipate the probable cause that was present at the time of his arrest, and . . . therefore . . . there was also probable cause for" his prosecution); *Betts*, 751 F.3d at 82.

Probable cause exists in the false-arrest context when an officer has "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the

6

belief that an offense has been committed by the person to be arrested," *Fabrikant v. French*, 691 F.3d 193, 214 (2d Cir. 2012) (quoting *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006)), and exists in the malicious-prosecution context under the "essentially . . . same" inquiry "in light of the facts known or believed at the time the prosecution is initiated, rather than at the time of arrest," *Danielak v. City of New York*, No. 02-CV-2349 (KAM), 2005 WL 2347095, at *10 (E.D.N.Y. Sept. 26, 2005) (quotation marks and citation omitted), *aff'd*, 209 F. App'x 55 (2d Cir. 2006). An officer may have probable cause even if it turns out that the officer "relied on mistaken information, so long as it was reasonable" for the officer to do so. *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010). Finally, under the collective knowledge doctrine, "an arrest . . . is permissible where the actual arresting . . . officer lacks the specific information to form the basis for probable cause . . . but sufficient information to justify the arrest . . . was known by other law enforcement officials initiating or involved with the investigation." *Smith v. City of New York*, 697 F. App'x 88, 89 (2d Cir. 2017) (quoting *United States v. Colon*, 250 F.3d 130, 135 (2d Cir. 2001)).

Qualified immunity, in turn, shields officers from liability for false arrest under Section 1983 so long as "arguable probable cause" existed "to arrest the plaintiff." *Myers v. Patterson*, 819 F.3d 625, 632 (2d Cir. 2016) (quotation marks omitted) (quoting *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2014)). And qualified immunity provides the same shield against claims of malicious prosecution so long as no "intervening fact" caused the "arguable probable cause" justifying the arrest to "dissipate" before the criminal proceeding was commenced. *Gaston v. City of New York*, 851 F. Supp. 2d 780, 793 (S.D.N.Y. 2012) (quotation marks omitted) (quoting *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996)). Arguable probable cause exists if either (i) "it was objectively reasonable for the officer to believe that probable cause

7

existed," or (ii) "officers of reasonable competence could disagree on whether the probable cause test was met." *Myers*, 819 F.3d at 633 (quotation marks omitted) (quoting *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004)).

The NYPD detectives are entitled to summary judgment on plaintiff's false-arrest and malicious-prosecution claims because the detectives had at least arguable probable cause to believe that plaintiff had committed reckless endangerment in the second degree at the time of his arrest and at the time of his prosecution. A person commits that crime "when he recklessly engages in conduct which creates a substantial risk of serious physical injury to another person." N.Y. Penal Law § 120.20.

The detectives had arguable probable cause to believe plaintiff had done so by attempting to hit Robert DiStasio with a vehicle. At the time of plaintiff's arrest, the evidence supporting that conclusion included: (i) DiStasio's report that an Infiniti car had "com[e] right at" him on a SJU campus road, then "came back around," "accelerat[ed]" by him, and "swept by [his] legs," DiStasio Depo. 11–13, 16; Alartosky Depo. 62; (ii) DiStasio's report that the driver was an Asian man, DiStasio Depo. 39; (iii) SJU video footage of a white Infiniti sedan letting Corpuz out of the passenger side and then driving off, Warshawsk Decl. Ex. 11 (Dkt. #95-11) 00:19–00:46; (iv) SJU video footage of a white Infiniti sedan passing DiStasio at a high rate of speed, Warshawsk Decl. Ex. 13 (Dkt. #95-13) 00:00–00:07; (v) SJU video footage of a white Infiniti sedan closing passing DiStasio at a high rate of speed a second time, causing DiStasio to jump out of the way, Warshawsk Decl. Ex. 12 (Dkt. #95-12) 00:00–00:04; (vi) evidence that the license plate on the white Infiniti sedan in the SJU videos was registered to Corpuz, Alartosky Depo. 26; (vii) Corpuz's representation to the officers that plaintiff was driving her car at the time of the alleged

8

vehicular assault, *id*. at 19, 27; and (viii) plaintiff's DMV photo, which confirmed plaintiff was an Asian male, *id*. at 52–53.

Those facts together were sufficient to lead "an officer in [the NYPD Detectives'] position [to] reasonably believe[] that" plaintiff had attempted to hit DiStasio with the Infiniti sedan. *Creese v. City of New York*, 815 F. App'x 586, 589 (2d Cir. 2020). At minimum, because "officers of reasonable competence could disagree on whether the probable cause test was met," *Serrano v. City of New York*, 793 F. App'x 29, 30–31 (2d Cir. 2019) (quotation marks omitted) (quoting *Kass v. City of New York*, 864 F.3d 200, 206 (2d Cir. 2017)), the officers had arguable probable cause to arrest plaintiff for "recklessly engag[ing] in conduct which creates a substantial risk of serious physical injury to another person," N.Y. Penal Law § 120.20, by attempting to hit DiStasio with the sedan. That same probable cause (and arguable probable cause) is fatal to plaintiff's malicious prosecution claim because plaintiff has offered no evidence of "intervening facts" arising between his April 4, 2019 arrest and his April 5, 2019 arraignment that "either cast doubt on [the] initial identification or made it apparent that the charges against [plaintiff] were 'groundless.'" *DaCosta v. Tranchina*, 783 F. App'x 54, 55–56 (2d Cir. 2019) (quoting *Lowth*, 82 F.3d at 571). The detectives are therefore entitled to qualified immunity on plaintiff's false-arrest and malicious-prosecution claims.

Plaintiff's arguments to the contrary are unpersuasive. Plaintiff assails the officers' reliance on Corpuz's account of who was driving her car, contending that it is unclear which officers Corpuz spoke with and that this uncertainty renders reliance on her statements improper. Mem. of Law in Opp'n to Defs.' Mots. for Summ. J. (Dkt. #97) ("Opp'n Mem.") 12. But the record is clear that Corpuz told Officer Conaghan it was plaintiff who had been driving her car and that Officer Conaghan put this information in the initial police report. NYPD Report 2;

9

NYPD Rule 56.1 Resp. ¶ 5; Alartosky Depo. 59. In any event, precisely which of the investigating officers spoke to Corpuz is irrelevant to the probable cause analysis because, at minimum, Corpuz had provided her account to one of the "law enforcement officials initiating or involved with the investigation," *Smith*, 697 F. App'x at 89, before the arrest occurred.

Plaintiff next contends that Corpuz's statements could not contribute to probable cause because Detective Celona had reason to believe that Corpuz was an unreliable witness. Opp'n Mem. 13–14. Officers are generally entitled to rely on the accounts they receive from witnesses as supporting probable cause, but an exception applies when "the circumstances raise doubt as to the person's veracity." *Feehan v. Lengyel*, 278 F. App'x. 47, 49 (2d Cir. 2008) (quotation marks omitted) (quoting *Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001)); *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995). Such circumstances arise, for example, if an arresting officer knew of a "bitter prior relationship" between the witness and the person alleged to have committed a crime, *Sankar v. City of New York*, 867 F. Supp. 2d 297, 306 (E.D.N.Y. 2012), or knew that the witness's "cognitive abilities" were so "severely impaired" as to render his "account . . . unreliable," *Moroughan v. City of Suffolk*, 514 F. Supp. 3d 479, 499–500, 522 (E.D.N.Y. 2021) (off-duty officer's account failed to establish probable cause because he was so drunk that he insisted to responding officers that he had shot himself when, in fact, he had not been shot at all).

Here, plaintiff's argument fails to undercut probable cause because plaintiff falls short in alleging circumstances raising doubt about Corpuz's credibility. Plaintiff principally suggests that Detective Celona should have regarded Corpuz as unreliable because she knew Corpuz had changed a story about a crime in the past. Opp'n Mem. 13–14. But the circumstances fail to suggest that Detective Celona should have doubted Corpuz's honesty. Corpuz had evidently

10

reported her dog stolen to SJU security, but she then told the officers that the matter was resolved after the return of the dog, which had been taken by Corpuz's boyfriend and friends. Corpuz Second Depo. 11–13; *see* Celona Depo. 15. The record does not suggest that Corpuz had knowingly made any false statement in reporting the dog as stolen initially—much less that Detective Celona had reason to believe she did. *Cf.* Celona Depo. 14, 48 (Detective Celona stating that she was not "aware of any situations where [Corpuz] lied to the police," was not "aware of any situations where [Corpuz] made a false report to the police," and did not ever "have occasion to believe that [Corpuz] was less than fully honest"). Accordingly, Celona's prior conversation with Corpuz in connection with the dog-theft report doesn't "suggest[] . . . any . . . material reason to doubt [Corpuz's] . . . veracity." *Schnitter v. City of Rochester*, 556 F. App'x 5, 8 (2d Cir. 2014).

Plaintiff also argues that probable cause could not rest on the photo array in which DiStasio identified plaintiff as the driver who had attempted to hit him, on the ground that the photo array was unduly suggestive. Opp'n Mem. 10–12. But, as explained above, Detectives Celona and Alartosky had probable cause to believe that plaintiff recklessly endangered DiStasio without that photo array. Setting the array aside, the evidence that plaintiff recklessly endangered DiStasio by attempting to hit him in a car included: (i) DiStasio's account of an Infiniti sedan attempting to hit him; (ii) video footage corroborating DiStasio's account and providing a license plate number for the offending car; (iii) the car's license plate being registered to Corpuz; (iv) Corpuz's identification of plaintiff, an Asian male, as the driver of her vehicle that day; (v) DiStasio's account that the driver was an Asian male; and (vi) plaintiff's DMV photo confirming plaintiff was an Asian male. As a result, even if the photo array is

11

assigned no evidentiary value, the detectives had probable cause to believe plaintiff had committed second-degree reckless endangerment.

### B. Detectives Celona and Alartosky Are Entitled to Summary Judgment on the Fair-Trial Claim.

The detectives are entitled to summary judgment on plaintiff's fair-trial claim for two reasons.

First, plaintiff has abandoned his claim that Detectives Celona and Alartosky "created false information and caused that information to be provided to the District Attorney." SAC ¶¶ 87–90. "Where a partial response to a motion [for summary judgment] is made—*i.e.*, referencing some claims or defenses but not others . . . in the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned." *Dynamic Concepts, Inc. v. Tri-State Surgical Supply & Equip. Ltd.*, 716 F. App'x 5, 14 (2d Cir. 2017) (italics in original) (quoting *Jackson v. Fed. Express*, 766 F.3d 189, 197–98 (2d Cir. 2014)).

Plaintiff did not address the detectives' dispositive argument that "[p]laintiff's fair trial claim . . . fails because the photo array was not used at a trial." Mem. of Law in Supp. of Defs. Celona's and Alartosky's Mot. for Summ. J. (Dkt. #86) 17. Indeed, plaintiff did not even mention his fair-trial claim in his brief opposing summary judgment, even though he vigorously defended his false-arrest and malicious prosecution claims. *Kovaco v. Rockbestos-Suprenant Cable Corp.*, 834 F.3d 128, 143 (2d Cir. 2016) ("[W]hen appropriate," a "court may . . . infer from a party's partial opposition that relevant claims . . . that are not defended have been abandoned" on summary judgment). Plaintiff has accordingly abandoned his fair trial claim. *Cui v. Fed. Bureau of Investigation*, 551 F. Supp. 3d 4, 16 (E.D.N.Y. 2021) ("Even [w]here abandonment by a counseled party is not explicit, a court may infer abandonment from the

12

papers and circumstances viewed as a whole.") (quotation marks omitted and alteration in original) (quoting *Camarda v. Selover*, 673 F. App'x 26, 30 (2d Cir. 2016) (collecting cases).

*Second*, in any event, the fair-trial claim would fail as a matter of law. To prove this claim, plaintiff must show that "an (1) investigating official (2) fabricate[d] information (3) that [wa]s likely to influence a jury's verdict, (4) forward[ed] that information to prosecutors, and (5) the plaintiff suffer[ed] a deprivation of life, liberty, or property as a result." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016). Because "the due process focus is principally on the fairness of the trial, rather than on the conduct of the police," *Wray v. Johnson*, 202 F.3d 515, 524 (2d Cir. 2000), a suggestive pre-trial identification cannot, standing alone, violate plaintiff's fair-trial right, *ibid.*; *see, e.g.*, *Grace v. City of New York*, No. 16-CV-4244 (RRM) (LB), 2018 WL 1368046, at *3 (E.D.N.Y. Mar. 16, 2018) ("Because [plaintiff] does not allege that . . . the photograph array . . . [was] admitted in a proceeding against him, this claim must be dismissed.") (citation omitted). Here, because plaintiff alleges only that the detectives conducted a suggestive photo array as part of their investigation, plaintiff's fair-trial claim is insufficient as a matter of law.

## II. I Decline to Exercise Supplemental Jurisdiction Over Plaintiff's New York Law Claims.

Because I have dismissed all the federal claims in this action, I decline to retain jurisdiction over plaintiff's state-law claims of false imprisonment and malicious prosecution against Corpuz. Under 28 U.S.C. § 1367(c)(3), "a district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction." Four factors bear on whether it is appropriate to exercise supplemental jurisdiction: "judicial economy, convenience, fairness, and comity." *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 81 (2d Cir. 2018). As a general matter, where "a plaintiff's federal claims are dismissed

13

before trial, the state claims should be dismissed as well." *Brzak v. United Nations*, 597 F.3d 107, 113–14 (2d Cir. 2010); *see Pension Benefit Guar. Corp. ex rel. St Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013). Plaintiff did not address supplement jurisdiction in his briefing, let alone provide a persuasive reason to depart from the usual practice of declining to exercise supplemental jurisdiction once federal claims are dismissed. Accordingly, I decline to exercise supplemental jurisdiction over plaintiff's New York law claims and deny Corpuz's motion for summary judgment without prejudice.

## CONCLUSION

Detectives Celona and Alartosky are granted summary judgment on plaintiff's claims of false arrest, malicious prosecution, and denial of a fair trial. I decline to exercise supplemental jurisdiction over plaintiff's state-law claims against Corpuz. The NYPD Detective's motion for summary judgment is granted and Corpuz's motion for summary judgment is denied without prejudice. The case is dismissed.

SO ORDERED.

*/s/ Rachel Kovner*
RACHEL P. KOVNER
United States District Judge

Dated: September 28, 2022
 Brooklyn, New York